UNITED STATES, Appellee

v

THOMAS D. BROWN, Basic Airman,
U. S. Air Force, Appellant

10 USCMA 498, 28 CMR 64

No. 12,534

Decided July 2, 1959

*Major Dwight R. Rowland* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Sam F. Carter.*

*Lieutenant Colonel Francis R. Coogan* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was convicted upon two specifications of desertion, in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885, and sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for two years. Intermediate appellate tribunals having affirmed the findings and sentence, we granted the accused's petition for review to determine two issues:

Whether the instructions upon the sentence were prejudicially erroneous.

Whether the law officer erred in holding the burden was on the defense to show prejudice in the event of failure to comply with the provisions of Article 33.

The first issue does not require extended discussion. Prior to the deliberations upon the sentence the law officer advised the court that "if the sentence does not include a dishonorable or bad-conduct discharge, the court shall not adjudge:

"a. Forfeiture of pay at a rate greater than two-thirds of his pay per month.

"b. Forfeiture of pay in an amount greater than two-thirds of his pay for six months."

In United States v Villa, 10 USCMA 226, 27 CMR 300; United States v Genuario, 10 USCMA 260, 27 CMR 334; and United States v Jobe, 10 USCMA 276, 27 CMR 350, it was held that this instruction is not prejudicially erroneous unless the record of trial affirmatively indicates it had a measurable impact upon the sentence. Since those cases have fixed the law, and since no such affirmative indication is presented by this record, the first assignment is without merit.

The circumstances giving rise to the second issue commenced to evolve upon the arraignment of the accused. Prior to entering his pleas the accused, through counsel, moved to dismiss both specifications and the charge, predicating his motion upon the claim of denial of the right to a speedy trial. The facts presented and the arguments urged in support of this motion were limited to the period following conclusion of the second absence. As to this, it was shown that the absence terminated April 12, 1958, and the accused was confined early the following morning at L. G. Hanscom Field, Bedford, Massachusetts. On April 25, 1958, he was transferred to his home station, Lockbourne Air Base, Ohio, where he was again confined pending disposition of charges preferred that day. These charges were received by the convening authority located at Westover Air Base, Massachusetts, and referred for trial on June 12, 1958. By letter dated July 10, 1958, defense counsel directed a "Request for Speedy Trial" to the convening authority inviting the latter's attention to the original date of confinement—April 12, 1958. Thereafter, on July 16, the trial counsel of the court-martial to which the charges were referred was relieved and another was

appointed. The latter served a copy of the charges upon the accused in accordance with Article 35 of the Code, supra, 10 USC § 835, on July 17.

Viewed in the light of Articles 10 and 33 of the Code, 10 USC §§ 810 and 833, the defense counsel argued, these facts showed that the accused was deprived of a substantial right and dismissal of the charges was required.

In response, the trial counsel declared:

". . . As a matter of common knowledge, I am sure the law officer knows that frequently, in cases of this nature, there is some degree of delay experienced, necessitated by obtaining both records and evidence. The present trial counsel before this court was not appointed as trial counsel until the 16th day of July 1958 and, on the 17th day of July 1958, served this accused . . . Since reference to me as trial counsel, there has been, at most, thirteen days delay. In my view, this is not an unconscionable delay, nor was the preferring and receipt of charges. Perhaps, the investigating of the offenses, referral, etc., is a little longer than is desirable. However, I am not in a position to fully explain this aspect because I do not have full knowledge of why such delay may have been occasioned. So, unless there is some showing that this delay is going to substantially prejudice the rights of the accused, I do not see how the motion made by the defense counsel can possibly be sustained.

"Finally, I want to point out the defense made the request for speedy trial on the 10th of July 1958. Only some thirteen days, certainly not an unconscionable period, has gone by since this request. On these points, I urge defense counsel's motion be denied."

The law officer then offered the defense a continuance for the purpose of procuring the deposition of a missing witness—ostensibly a prosecution witness—but counsel declined, expressing his opposition to any further delays. Thereupon, he asked whether counsel

desired to offer any evidence "that the accused's substantial rights have been materially prejudiced." Counsel declared he had no witnesses he wished to call at the moment. At this, the law officer made his ruling in the following language:

"LAW OFFICER: The law officer wishes to state that, of course, he is in full agreement with the principles referenced in the Federal Constitution, and in the Uniform Code of Military Justice, pertaining to providing a prompt trial for the accused. However, in the absence of any further evidence to indicate specifically that the accused's substantial rights have been materially prejudiced as a result of the referenced delay, the motion will be denied."

When this ruling was announced, the accused entered a plea of not guilty to each specification of the charge, but guilty of absence without leave, in violation of Article 86 of the Code, supra, 10 USC § 886.

A motion to dismiss is properly addressed to the law officer under Article 51(b), 10 USC § 851. His ruling thereon is predicated upon the exercise of his sound discretion as applied to the facts before him, and is reviewable only for abuse. United States v Richard, 7 USCMA 46, 21 CMR 172; United States v Hounshell, 7 USCMA 3, 21 CMR 129. However, when his ruling proceeds from an erroneous understanding of the applicable law, the accused may well be harmed and thus have a firm basis for obtaining relief from appellate tribunals. Illustrative of this principle is United States v Berry, 6 USCMA 609, 20 CMR 325. There the law officer announced diametrically opposed standards purporting to fix the burden of proving the legality of a search. This Court noted that this produced confusion, and set aside the findings to which the ruling pertained, holding "a conviction should not rest upon uncertainty and confusion concerning the correct principles of law applicable to a vital part of the case."

An improper standard was applied by

the law officer in the instant case, and in a vital part of the case.

Article 10, supra, provides in pertinent part:

". . . When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him."

This Article reiterates "the right to a speedy and public trial" guaranteed by the Sixth Amendment to the United States Constitution. United States v Hounshell, supra.

Articles 33 and 98 of the Code, supra, 10 USC §§ 833 and 898, give emphasis to the importance of this right. The former provides:

"When a person is held for trial by general court-martial the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the investigation and allied papers, to the officer exercising general court-martial jurisdiction. If that is not practicable, he shall report in writing to that officer the reasons for delay."

Article 98[1] of the Code, supra, provides sanctions for unnecessary delays, or failures to enforce or comply with any provision of the Code regulating court-martial proceedings at any stage.

From these provisions, read in the light of the intent of Congress as ascertained from the views ▆▆▆▆ ▆ of the framers of the Code, set out in our opinion in United States v Hounshell, supra, it is clear that whenever it affirmatively appears that officials of the military services have not complied with the requirements of Articles 10 and 33, supra, and the accused challenges this delict by appropriate motion, then, the prosecu-

tion is required to show the full circumstances of the delay. Of course, an accused is not automatically entitled to a dismissal of all charges against him. Rather, the law officer must decide, from all the circumstances, whether the prosecution has proceeded with "reasonable dispatch." United States v Callahan, 10 USCMA 156, 27 CMR 230.

In the instant case, the law officer was aware of the date the accused was originally confined, when charges were preferred, referred for trial and served upon the accused. One hunded and eight days had elapsed before the accused was produced before a court-martial for arraignment. Obviously, each successive step was taken only after substantial delay. But, rather than explain these deficiencies, trial counsel, after conceding that the required pretrial steps had taken "a little longer than is desirable," lightly dismissed them with the assertion that he had no knowledge of the circumstances thereof. The law officer reflected a similar approach to the problem for he immediately called upon the accused to establish specific prejudice. When no further evidence was advanced by the defense, he denied the motion before him. By these pronouncements he demonstrated his misconception of the effects of Articles 10 and 33. Rather than require the prosecution affirmatively to justify the delays, he called upon the accused to establish specific prejudice. This shifting of the burden of proof, or explanation, prevented the establishment of the circumstances of the delays at the trial level—the only satisfactory forum for conducting truly adversary proceedings, and for testing the validity of evidence in the time-honored process of cross-examination. By this action the law officer curtailed the development of all the circumstances essential to a proper determination of whether or not the lapse of time was due to purposeful or oppressive design

---

[1] "Any person subject to this chapter who—

(1) is responsible for unnecessary delay in the disposition of any case of a person accused of an offense under this chapter; or

(2) knowingly and intentionally fails to enforce or comply with any provision of this chapter regulating the proceedings before, during, or after trial of an accused;

shall be punished as a court-martial may direct."

**503**

on the part of the prosecution or to a lack of reasonable diligence. United States v Callahan, supra; Shepherd v United States, 163 F 2d 974 (CA 8th Cir) (1947). Prejudice to the substantial rights of the accused is manifest. United States v Berry, supra.

It is urged, however, that the accused, by his entry of a plea of guilty, lost any right to complain ██ on appeal concerning this error and its effect on the trial proceedings. Judge Latimer and I do not believe his plea had that effect, for one of the principal purposes of the right to a speedy trial is to avoid oppressive delay which might well lead a defendant to conclude that his best interests would be served by judicially confessing his guilt. People v Chirieleison, 3 NY 2d 170, 143 NE 2d 914 (1957). Cf. People v Sweeney, 409 Ill 223, 99 NE 2d 143 (1951). While the Federal courts have not decided this precise issue, it is worthy of note that the cases involving this constitutional right have involved pleas of guilty and no argument of waiver was predicated thereon. Shepherd v United States, supra; Parker v United States, 252 F 2d 680 (CA 6th Cir) (1958). Thus, we conclude the law officer's error was not vitiated by the accused's later plea.

However, as indicated in his dissent, Judge Latimer is of the opinion the delay in this case raises no issue of denial of a speedy trial. Chief Judge Quinn joins with me in the conclusion that error is present. Nevertheless, he is of the view, as indicated in his separate opinion, that the law officer's action herein was purged of prejudice by the plea of guilty to the lesser offense and he would return the record to the board of review for affirmance of findings of guilty of absence without leave and reassessment of the sentence. Although I agree with neither position, the practical result thereby reached is to return the case to the board.

Accordingly, the decision of the board of review is reversed and the record of trial is returned for affirmance of findings of guilty of absence without leave and reassessment of sentence or

**504**

direction of a rehearing on the desertion charge.

QUINN, Chief Judge (concurring in part and dissenting in part):

I agree with the principal opinion as to the law officer's ruling. However, a plea of guilty constitutes a ██ waiver of the objection to trial. People v Sweeney, 409 Ill 223, 99 NE 2d 143. I would, therefore, return the record of trial to the board of review for reassessment of the sentence on findings of guilty of unauthorized absence in violation of Article 86, Uniform Code of Military Justice.

LATIMER, Judge (dissenting):

I dissent.

I

I prefer to dispose of this case within the framework of the legal issues as they were developed in the trial forum. A law officer must rule on the motion presented to him and not on some finely spun hypothesis raised on appeal. In the case at bar, what was a simple issue at the trial has been converted into a complex and confused question at this level. Here the law officer was confronted with a defense motion to dismiss the Charge and specification on a specific ground. He denied the requested relief, but his ruling is now reversed on an untenable theory which was introduced in the case long after he acted. Certainly I can hardly expect a law officer to possess the omniscience to foresee every frontal and oblique attack which may be made on his rulings and so word them that they will repel every collateral deficiency asserted at a later time. The only question before the law officer was this, and I quote it in the language of defense counsel:

"The accused makes a motion for appropriate relief, specifically, that the charge and specifications be dismissed in this case, for the reason that the accused has not been afforded a speedy trial commensurate with the Sixth Amendment of the Constitution, and Article 10 of the Uniform Code of Military Justice."

To make doubly sure of the contention, the law officer posed the following question and received the quoted reply:

"It is the law officer's understanding that the defense counsel has moved that both specifications, and the charge, be dismissed, because the accused has not been granted a prompt trial, in accordance with the Federal Constitution, and the Uniform Code of Military Justice. Is that correct?

"DEFENSE: That is correct, sir."

The foregoing quotations state clearly and concisely the problem presented to the law officer by the defense motion, and I propose to express my reasons for supporting his ruling before taking up the incidental matters mentioned by the Court. As a starting point, I note the question raised by the motion is one which, according to the overwhelming weight of civilian authority, is addressed to the sound discretion and judgment of the court. Why my associates do not apply that principle and measure the law officer's ruling by that yardstick, instead of overturning his denial on this Court's self-conceived theory, is unclear to me. This is not a case where an injustice would be worked on the accused and an unassigned error must be noticed to prevent that result. Accused was not fighting for an early trial on the first offense, for he escaped and remained away for approximately nine months. Moreover, he turned himself in at a station which required the Government to collect evidence from more than one locality. Significantly, my attention has not been directed to any case in which a trial judge was reversed because he denied a motion for dismissal based solely on a time interval of three and one-half months. Most of the cases I find reported involve delays of years, not months, and even then time alone has never been the touchstone for granting the motion. I, therefore much prefer to consider this case in light of the principle that we should not reverse the law officer unless he abused his discretion in ruling as he did.

In United States v Wilson, 10 USCMA 337, 27 CMR 411, and United States v Wilson, 10 USCMA 398, 27 CMR 472, we stated the general rules applicable to cases involving the issue whether an accused was denied his right to a speedy trial. In both instances we affirmed the conviction. And with respect to delay, of the three cases, the one at bar is by far the least aggravated factually. The accused herein committed his first offense on January 1, 1957, and he was tried some nineteen months later. However, most of that delay can be brushed aside because during this period accused was absent without leave and not available for prosecution for fourteen months and twenty-one days. The interim period between his first apprehension and return to home station and his second unauthorized absence was only eighteen days, and he unceremoniously left military control by escaping from confinement. This is a rather sordid record for one claiming the Government was not diligent in going forward with its prosecution, and one which brings the case within the sweep of the rule that delays caused by accused's own misconduct are not chargeable to the prosecution. Obviously, accused's last extended absence would deny him any relief on the first offense unless the delay in proceeding after his return to duty on April 12, 1958, was unreasonable in light of all the circumstances and defense counsel well understood that, for he limited his contention to that point. I, therefore, look to the course of this prosecution during this critical period to ascertain whether the accused is entitled to the relief for which he pleads. As is suggested in the Court's opinion, the total elapsed time from his return to military control until he was tried was not greater than one hundred and eight days, but also some of that time is chargeable against the accused.

In placing responsibility for any delay in the period just prior to trial, I believe there are several items appearing in this record which are of more than passing interest. On April 12, 1958, accused surrendered to civilian authorities at Boston, Massachusetts. The

505

next day he was returned to military control and confined in the guardhouse at Bedford, Massachusetts. It was necessary that he be transported to his home station, Lockbourne Air Force Base, Ohio, and he arrived there on April 25, 1958. Fault for that thirteen-day period of delay is not chargeable to the Government. On that date, charges were preferred against the accused, and they were forwarded to the next higher commander and referred to a pretrial investigating officer. The hearing was held thereon, and on May 15, 1958, the investigating officer prepared his report recommending trial by general court-martial. In that report, it appears the accused made a demand for the testimony of four witnesses to support his defense on the charge of escape from confinement. It further appears that a diligent search was made for these witnesses but, due to their having been separated from the service, their testimony was not available. The investigating officer, however, recommended that if the evidence could not be obtained, the one specification should be reconsidered for insufficiency of the evidence and it was later dismissed. The investigation was forwarded to the officer exercising general court-martial jurisdiction on May 19, 1958. This necessitated handling the matter by mail, for he was stationed at Westover Air Force Base, Massachusetts. He had to refer the record to his staff judge advocate who, on May 29, 1958, rendered his advice recommending trial by general court-martial on only two of the three offenses. The commander approved the recommendation, and on June 17, 1958, the record was forwarded back to the Commander, 81st Air Base Group, Lockbourne Air Force Base, Ohio, for reference to trial counsel of the general court-martial detailed to try the accused.

The original absence without leave was terminated when the accused was turned over to military authorities by police officials of the Cleveland, Ohio, police department. In order to prove apprehension, it was necessary that a deposition be taken. On July 7, 1958, orders were issued for taking the deposition and forwarded to the Lock-

bourne Air Force Base, Ohio. Written and cross-interrogatories were prepared and trial and defense counsel both participated in this endeavor to obtain evidence. One other deposition was prepared at the same time, but apparently the witness could not be located and it was not executed. On July 10, 1958, the accused made a demand for immediate trial. This is the first affirmative action taken by him to claim his right to a speedy trial. The trial was set nineteen days thereafter to allow time for the return of the depositions. The portion of the trial counsel's statement quoted in the Court's opinion has only to do with this last nineteen days, and omitted entirely by my associates is any reference to the chronology of events which trial counsel read to the law officer and which he stated was reflected in the file.

In summarizing the early history of this case, it appears that of the one hundred and eight days, a total of thirteen days elapsed before the military could return the accused under guard to his home station. The pretrial hearing was spread over twenty days, and if this was a period longer than necessary, the delay was induced by, and in aid of, the accused. That leaves some seventy-five days, during which time charges were preferred and forwarded through military channels, correspondence between distant commands was carried on, charges were forwarded to the officer exercising general court-martial jurisdiction, the record was referred to the staff judge advocate for pretrial advice, charges were dispatched to trial counsel, depositions on written interrogatories were processed, a court-martial was convened, and there was one substitution of trial counsel. That chronology, when considered in connection with the distance between commands and other well-known factors hardly shows an abandonment of prosecution by the Government or a delay of such magnitude that accused was entitled to a dismissal of the Charge and specifications. While my associates only indirectly hold to the contrary in measuring the results reached by them, I merely ask the reader to compare this situation with the two oft-cited cases

which granted relief to an accused. In Petition of Provoo, 17 FRD 183, aside from an interminable delay prior to indictment, the defendant was in prison five years awaiting trial, during which time he had no opportunity to locate and interview possible witnesses, many of whom had died or their whereabouts were unknown. In United States v McWilliams, 163 F 2d 695 (CA DC Cir), the defendants, some of whom had made repeated requests for trial, were freed because they were not accorded their privilege to a speedy trial but the facts of that case showed a time interval of six years between the commission of the offense and the motion to dismiss and two years between indictment and the motion. Comparison should also be made with the recent case of Pollard v United States, 352 US 354, 77 S Ct 481, 1 L ed 2d 393, where through accident or mistake by the Government, the accused was not sentenced for a period of two years.

In concluding my presentation on this point, I call attention to the language long ago used by the Supreme Court. In Beavers v Haubert, 198 US 77, 25 S Ct 573, 49 L ed 950, Mr. Justice McKenna speaking for a unanimous Court had this to say:

". . . The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice."

## II

This brings me to the first point of the Court's opinion. The assertion that the law officer applied an ▆▆▆▆▆▆ ▌ improper standard—and I must assume my associates mean in ruling on the motion—is not supported by the record or by the law. As previously indicated, counsel for the accused in his motion relied entirely on the elapsed period of one hundred and eight days and in the course of his statement he made reference to a certain deposition which he offered in evidence to demonstrate the results of the delay. The law officer announced he was interested in ascertaining whether there had been any material prejudice to the substantial rights of the accused in connection with the delay. Time alone does not indicate a violation of a right to a speedy trial and he requested information from accused's counsel as to whether the accused's substantial rights had been prejudiced. In addition he sought to ascertain whether or not defense counsel was interested in having the witness ordered to be present at the time of trial. Defense counsel asserted that he did not have any witness he wished to call and that his client was prejudiced only because he was confined. It ought to be obvious that time might be of some importance if it is coupled with the loss of testimony, the dimming of memories, or any other eventualities which might prejudice the defense, and an inquiry to ascertain the results of a delay does not prove a misunderstanding of burden of proof.

If a law officer is to exercise his discretion wisely, he must know whether the delay has impaired any substantial right or privilege of the accused, and the defense is in the best position to furnish that information. Certainly a law officer would be shortsighted if he did not request the defense to make the best showing possible. We are not here dealing with a trial on the merits with its concomitant presumption of innocence and other trial privileges. Here, the accused is the moving party, and he is asking the law officer to exercise his discretion in favor of the motion. The movant can hardly expect to get any relief unless he furnishes an evidentiary basis to support his motion. The mere statement that accused has been confined for one hundred and eight days is not sufficient to compel the law officer to rule in favor of the defense, particularly when the commands are split and he judicially knows the procedural steps required prior to trial. Factors governing a speedy trial are relative, and the loss or unavailability of testimony beneficial to an accused might call for a different ruling. Certainly all this law officer tried to do was to ascertain whether the accused complained on any ground other than time and confinement. When he was assured the ac-

cused did not, he was entirely within his discretion to rule on the showing made.

### III

The next point has to do with my associates' interpretation of Article 33 and the holding that the Government is required to explain the full circumstances of the delay. That Article provides:

"When a person is held for trial by general court-martial the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the investigation and allied papers, to the officer exercising general court-martial jurisdiction. If that is not practicable, he shall report in writing to that officer the reasons for delay."

Obviously, the named officer must report in writing the reasons for the delay for the statute so provides, but the report is between officers in the chain of command and the accused has no legal interest in an officer's excuse to his superior. He is only affected by the delay, not the reason. Moreover, I know of no rule of law which compels the law officer to require the Government to explain why it denied the accused a right. If he has been harmed, the explanation is futile. If he has not, the reason is unimportant. Accused's only obligation is to prove the violation and, if the Government is content to take the risk of no explanation it may do so; an unexplained denial is accused's most powerful weapon. But, a caveat to military subordinates to expedite the processing of cases or to account to their seniors for their delict does not grant an accused a fixed right. Particularly is that true when the time is conditioned upon the practicabilities of the situation. A rule of that kind and the explanation therefore is for intraservice application and is used by a senior commander to gauge the conduct of subordinates. It is similar in some respects to the provision of Article 67 which requires this Court to act within thirty days. Surely no one would contend that if we were to fail to act within that period, accused would be entitled to a dismissal.

In United States v Hounshell, 7 USCMA 3, 21 CMR 129, the Chief Judge made this significant statement:

"It is apparent therefore that the draftsmen of the Uniform Code and Congress did not intend to provide for the automatic release from confinement of an accused because he is not brought to trial within a defined period of time. Instead, they provided for two things: (1) They reaffirmed an accused's right to a speedy trial, which he could effectively enforce by a motion for appropriate relief. He would then either be tried expeditiously or the charges against him would be dismissed. (2) Any person responsible for an unnecessary delay in the disposition of a court-martial case could be tried for a violation of the Uniform Code."

In United States v Callahan, 10 USCMA 156, 27 CMR 230, we were confronted with legal issues identical to those in the case at bar except there the time between confinement and trial was one hundred and forty-nine days. Article 33 was not strictly complied with, and that deficiency brought forth the following rationalization by this Court:

". . . Article 33 requires that the charges be forwarded to the officer exercising general court-martial jurisdiction, 'together with the investigation and allied papers,' within eight days after the accused is ordered into 'arrest or confinement, if practicable'; otherwise, a written report must be submitted to the general court-martial authority setting out 'reasons for delay.' There is no specific provision for dismissal of the charges for failure to comply with these provisions of Article 33. In ruling on the motion to dismiss, the law officer said: 'I should suppose that there has not been a technical compliance with Article 33,' but he accepted trial counsel's statement that there had been weekly oral communications between the confinement facility and the legal office of the general court-martial authority on the status of the accused's case. The defense

508

did not specifically challenge the failure to submit written reports on the delay as required by the Article. Under the circumstances, we think the effect of the violation of the Article, if any, is measured by the 'reasons' for the delay. These are interwoven in the argument on speedy trial; consequently, we consider them in connection with that issue."

I contend that in this instance defense counsel did not specifically challenge the failure to submit a report and, unless the Court desires to retreat from the rule it announced in that case on January 30, 1959, any deficiency in this instance should be considered only in regard to the lack of a speedy trial. I have already disposed of that issue.

## IV

One other matter involved in the interpretation of Article 33 must be considered. The Court apparently assumes a violation by the service. However, I point out that there is no indication in the statute of the terminal date of the period. It seems to me that this Article was drafted to discourage unit commanders from arresting and confining accused persons of their commands without placing charges in military channels for processing. While I am informed the Army uses a period from preferment of' charges until the officer exercising special court-martial jurisdiction forwards the file, the Article does not contemplate completion of all pretrial proceedings within the eight-day period for the only requirement is that the charges, together with the investigation and allied papers, be forwarded by the commanding officer within the prescribed time. He is required to make an investigation before he prefers charges and, in many instances, he has documents to support the specifications. In my opinion, the Article deals with his responsibility and not that of others in the chain of command. It must be considered that if other commanders are involved, the period would involve all pretrial proceedings, and there are too many procedural steps to permit that interpretation. The best information I can gather on the interpretation of this Article from available sources is the statement by Mr. Larkin found in Hearings before the House Armed Services Committee, 81st Congress, 1st Session, on HR 2498, page 908. His statement is as follows:

"I also draw your attention to article 33, which attempts to make a flexible time limit, where we set an 8-day time period is provided, where in the article requires the commanding officer in general court-martial cases to forward the charges he has received against a man to the next higher echelon.

"We put in there 'if practicable' to take care of the exigencies which may not make it practicable, but if he does not do it as you see he must report the reasons why he does not.

"So I think the combination of 33 and 98 is pretty good assurance that the cases will be speedily processed. And as I said before, there is great desirability in that. But you have to be careful in not going too far and process the cases so speedily that the accused does not have a chance to prepare his defense. I think it is a pretty good balance, the way it is provided."

If Mr. Larkin's interpretation is correct, in this case the Article was complied with, for the accused was confined to his home station on April 25, 1958, and charges were forwarded to the next higher commander the same day. But, even if that interpretation is wrong, any violation of this Article was occasioned by the delay in the pretrial investigation which was chargeable to the accused.

## V

Another important matter not considered by the majority is that accused never requested a trial until July 10, 1958. He was tried on July 29, 1958. In United States v Hounshell, supra, we held that ordinarily an accused is in no position to complain about a speedy trial unless he demands a hearing. In the case at bar, there are no unusual circumstances and, if that rule is applied,

**509**

there is only a period of nineteen days and the record shows that the selection of the trial date was governed in part by the estimated time the depositions would be returned. There were other reasons why the case could not be tried sooner, but they are unimportant as a nineteen-day delay between demand and trial is not unreasonable.

## VI

For the above stated reasons, I would affirm the decision of the board of review. I find no error and therefore in my view of the case it is unnecessary to consider whether accused's plea of guilty to simple unauthorized absence operated as a waiver. My associates, however, reach this question, and their views differ. Accordingly, for the benefit of those who would otherwise be without guidance, and in order to obviate future and unnecessary consideration of this question, I briefly set forth my view.

I believe denial of a speedy trial to be a bar to prosecution of not only the greater, but also all lesser ■■■■■■ ■ included crimes. The right is protected by the power of the Court to punish the Government for its procrastination. When the penalty is imposed, all prosecutions are barred, and if, as my brothers seem to hold, the law officer ruled improperly on that issue, I would be constrained to rule that his error ran to all offenses charged. If a plea of guilty were held to purge the error for the lesser included offense, I am at a loss to understand why it would not cure the error for all purposes. Guilty pleas may correct many asserted errors, and they may waive some rights an accused might otherwise insist upon, but when he seeks to erect a bar to prosecution and he is erroneously denied that right, the denial is either rendered harmless by the plea or it is not. The only element differentiating the two offenses herein involved is intent, and to me it is a bit confusing to carve up the offenses and bar only the greater. If I were persuaded the law officer erred in his ruling on whether the Government should be penalized, I would hold that accused's plea of guilty did not free the Government from the penalty.

However, as noted previously, my views on waiver have no impact in this case, for I find no infirmity in the findings of guilty of desertion. No other Judge is of the same view, however, and therefore in order to effect a practical disposition of this case without prejudice to accused, I join in the disposition ordered.