UNITED STATES, Appellee

v

GARY M. TIBBS, Private First Class, U. S. Army, Appellant

15 USCMA 350, 35 CMR 322

No. 18,166

May 7, 1965

*Captain Clifford B. Hearn, Jr.*, argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Lieutenant Colonel Jacob Hagopian*.

*Captain Richard J. Andriolo* argued the cause for Appellee, United States. With him on the brief were *Colonel Edwin G. Schuck* and *Lieutenant Colonel Francis M. Cooper*.

## Opinion of the Court

QUINN, Chief Judge:

The accused contends the law officer erred to his prejudice by relying upon an incorrect rule of law to deny a defense motion to dismiss the charges because of inexcusable delay in prosecution.

At his arraignment, on charges of housebreaking and attempted larceny of property on two separate occasions, in violation of Articles 130 and 80, Uniform Code of Military Justice, 10 USC §§ 930 and 880, respectively, the accused entered a plea of guilty.

The law officer recessed the open court proceedings to inquire into the voluntariness of the plea. In the out-of-court hearing, the accused advised the law officer he fully understood the nature and the consequences of the plea; he understood and agreed to a stipulation of facts which recited the circumstances of the commission of the offenses; and he had a pretrial understanding with the convening authority, that if the sentence of the court-martial exceeded a dishonorable discharge, confinement at hard labor for three years, and accessory punishments, it would be reduced to the stated maximum. On conclusion of the inquiry, defense counsel moved to dismiss the charges for denial of "due process in violation of Articles 10 and 33 of the Code." Although indicating that the motion should have been made before the plea (cf. United States v Schalck, 14 USCMA 371, 34 CMR 151; United States v Hounshell, 7 USCMA 3, 6, 21 CMR 129), the law officer said he would, nevertheless, "certainly consider" it.

From the brief chronology of events recited by defense counsel, it appears the accused was confined in the post stockade on July 2, 1964. The charge sheet was sworn to on July 17, and the accused was informed thereof on July 25. The investigation under Article 32 of the Uniform Code, supra, 10 USC § 832, was held on July 30; and the report of the investigating officer was received on August 4, by the staff judge advocate to the general court-martial authority. The latter referred the charges to trial on August 8; and the trial was held on August 26. The total time between confinement and trial was fifty-five days. Counsel contended "there was no problem in obtaining any . . . evidence." The accused had made a statement on July 6, the nature of which, however, defense counsel did not define, and the Military Police completed its report on the incidents on July 7. Defense counsel argued there was "no reason indicated for this delay" between the police report and accomplishment of the formal charge sheet. He maintained it "was entirely practicable" for the charges

to be forwarded to the general court-martial authority within eight days of the accused's confinement, as required by Article 33 of the Uniform Code, supra, 10 USC § 833.

In reply, trial counsel contended he had not anticipated the motion and would have to investigate the course of proceedings. He argued that the accused was not prejudiced by the alleged infringement of the Uniform Code. At that point, the record of trial reflects the following:

"LO: Well, as to Article 10, it would seem to me, based on the stipulation apparently the accused was, in fact, apprehended inside the Main Post Exchange which was allegedly broken into.

"TC: Yes, sir.

"LO: So it would appear offhand that there shouldn't be any question in his mind as to the reason for which he was being held.

"Now, as to Article 33, apparently —do I understand that there has been a non-compliance with Article 33 as to explaining any reason for delay after being held for trial by general court-martial—that is, after charges were sworn and it was determined that general court was recommended, that there was no compliance with Article 33?

"ADC: That's correct, sir.

"LO: Under the circumstances, unless the defense can show that the failure to comply with Article 33 is prejudicing him in some way I'm not going to sustain the motion under the circumstances of this case. This well may give rise to disciplinary action against the people who failed to comply with the statute, as far as I'm concerned, but under the circumstances of this case I don't believe that it warrants a dismissal of the charges.

"Do you have anything else?

"ADC: No, sir.

"LO: The motion of the accused to dismiss is hereby overruled."

During final arguments to the court-martial on the sentence, defense counsel pleaded for leniency. Among other things, he emphasized the "punishment . . . [the accused] has already served" by reason of the fifty-five-day pretrial confinement. The maximum sentence for the offenses to which the accused pleaded guilty included a dishonorable discharge and confinement at hard labor for fifteen years. The court-martial limited the sentence to a bad-conduct discharge, confinement at hard labor for twelve months, and accessory penalties.

Neither the failure to demand trial nor a plea of guilty at trial deprives the accused of the protections accorded him by Articles 10 and 33 of the Uniform Code, supra, 10 USC §§ 810 and 833, respectively. United States v Schalck, supra. A different situation may arise when the accused, as here, utilizes the circumstances which allegedly constitute a violation of these Articles to mitigate his sentence. See United States v Hounshell, supra, at page 7. Turning an erroneous procedure into a means of personal advantage may expurgate all possible prejudice from the error. See United States v Wolfe, 8 USCMA 247, 24 CMR 57. However, we pass over this preliminary question to consider the merits.

The accused contends the chronology of events presented by defense counsel at trial established a violation of Articles 10 and 33, and the Government was then required "to show the full circumstances of the delay." He further maintains that instead of requiring the Government to meet its burden, the law officer erroneously demanded from him proof of prejudice. United States v Brown, 10 USCMA 498, 503, 28 CMR 64. Government counsel maintain the record of trial is misconstrued by the accused. They say it shows the law officer, in fact, considered the merits of the motion, and concluded on the basis of the matters presented to him, that the relief sought was not justified; yet he accorded the accused the opportunity to go beyond the initial facts to show special circumstances of prejudice.

There is justification for this view. But, even if we assume the law officer based his decision upon an improper rule of law, the evidence of what transpired between the accused's incarceration and the trial appears in the record of trial. As a result, the "full compass of the defense allegation" is before us, and "we can properly evaluate its merits." United States v Broy, 14 USCMA 419, 422, 34 CMR 199. Cf. United States v Schalck, supra, at page 373.

We turn first to the alleged violation of Article 10. In substance, the Article provides that on arrest or confinement of the accused, "immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." These provisions are intended to insure that the accused knows the reason for the restraint of his liberty, and to protect him, while under restraint, from unreasonable or oppressive delay in disposing of a charge of alleged wrongdoing, either by trial or by dismissal. Whether Article 10 alone, or in combination with Article 33, affords the Government less latitude in the time it has to bring a case to trial than that provided by the constitutional guaranty for a speedy trial need not be determined here. See United States v Callahan, 10 USCMA 156, 27 CMR 230. It suffices to note that the touch stone for measurement of compliance with the provisions of the Uniform Code is not constant motion, but reasonable diligence in bringing the charges to trial. United States v McKenzie, 14 USCMA 361, 34 CMR 141; United States v Brown, 13 USCMA 11, 14, 32 CMR 11; United States v Davis, 11 USCMA 410, 29 CMR 226. Brief periods of inactivity in an otherwise active prosecution are not unreasonable or oppressive. United States v Williams, 12 USCMA 81, 83, 30 CMR 81.

The accused was confined on July 2, and advised of the formal charges on July 25, 1964. The initial question, and the one which instantly engaged the law officer's attention, was whether the accused was informed of the specific accusations against him. To answer the

**353**

question, the law officer looked to the stipulation of facts, already in evidence, from which it appeared the accused had attempted to get through a check-out counter at the Main Post Exchange at Fort Carson, Colorado, with various articles of merchandise. He represented these were previously purchased in town. When it was pointed out that the articles bore Post Exchange tags, the accused fled. He was apprehended almost immediately by Military Policemen, but released to his Company. Early the next morning, the accused and two accomplices broke into the Post Exchange. A Military policeman making a tour of the area discovered the forcible entry. The accused was found hiding in a stock room in the Exchange. An authorized search of his person uncovered various items of jewelry belonging to the Exchange. The law officer's comment on the facts indicates he regarded the accused's apprehension, in the very commission of the offenses, as sufficient to inform him of the reasons for his confinement, within the intendment of Article 10. In the *Schalck* case, supra, at page 374, the accused contended his knowledge of the specific offenses was insufficient to satisfy the letter of Article 10 that, on confinement, "immediate steps . . . be taken to inform him of the specific wrong of which he is accused," because his knowledge was antecedent to confinement and not the result of anything said to him by another. We found it unnecessary to pass on the matter, and we declined to decide the issue. It is now, however, directly before us.

The Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, at page 37, suggests that the Article 10 requirement of notice is satisfied when, as provided by paragraph 32*f* (1) of the Manual for Courts-Martial, United States, 1951, the accused's immediate commander "inform[s] the accused of the charges against him . . . and complete[s] and sign[s] the certificate to that effect on page 3 of the charge sheet." On that basis, the time between confinement and the advice by the accused's commander would not be counted in considering an alleged violation of Article 10. At

least by implication, our decisions have taken a narrower view of the requirement of notice imposed by the Article in that we have consistently looked to the time of confinement. Whether there is a conflict between the command of Congress expressed in Article 10, and the procedure delineated in the Manual, need not now be decided. Looking at the facts from the moment of confinement, there is no violation of the objectives of Article 10.

In Burns v Harris, 340 F2d 383, 386 (CA 8th Cir) (1965), the accused was confined by sentence of a court-martial. He sought a writ of *habeas corpus*, partly on the ground that, while in pretrial confinement, he was not, in violation of Article 10, notified of the accusation against him. The Court of Appeals rejected his contention. It said: "his knowledge is conclusively demonstrated by his oral confession to the assault on the very day he was apprehended and by his being placed in pretrial confinement only after that confession." Here, the accused was caught in the Exchange building, which he had forcibly entered, and was apprehended with stolen merchandise in his pockets. Under these circumstances, he could not, as the law officer observed, have "any question in his mind" as to the reason for his confinement.

If the accused knows immediately before his arrest or confinement the precise offense which led to █ the restraint on his freedom, what benefit can he possibly derive from notice immediately after his arrest or confinement that he is being held for that wrong? The purpose of the notification requirement of the Article is to provide the accused with knowledge of the offenses charged so that he might at once consider his defense and apprise his family, friends, or counsel of his predicament to enable them to assist him by whatever means available. That purpose is satisfied whether the accused's knowledge of the specific offense comes immediately before or immediately after arrest or incarceration. When it is certain that the basic purpose of a prescribed procedure has been achieved, a departure

from the strict letter of the law defining the procedure is not a denial of due process. See United States v Cruz, 10 USCMA 458, 28 CMR 24. It may be that, while caught in the commission of a crime, the accused might not know his conduct subjects him to a serious charge. For example, the accused might, in the course of an argument, strike at another with a chain. Depending upon its construction, size, and other characteristics, the chain could be a dangerous weapon; if it is, the accused could be confined on a charge of assault with a dangerous weapon, yet he could reasonably believe he was held merely for simple assault. See United States v Cook, 12 USCMA 518, 31 CMR 104. In such a situation, the accused's antecedent knowledge might not satisfy the mandate of Article 10. The stipulation of facts in this case leaves no doubt of the accused's knowledge of the nature of the offenses for which he was confined. Consequently, whatever the basis of the law officer's ruling, the facts exclude the conclusion that the accused did not comprehend the specific wrongs for which he was confined.

Moving to diligence of prosecution as required by Article 10, the intervals of time between the various steps, as depicted by the defense, were neither unreasonable nor oppressive. Although the accused was apprehended in the commission of the crimes, the five days the Military Police took to complete its investigation was not an unreasonable period.[1] From the stipulation of facts and the nature of the offenses, it is reasonably inferable that Exchange personnel had to be interviewed to identify the property found in the accused's possession, and to verify the unauthorized entry into the store premises. We also can take notice of the fact that the police would obtain background information on the accused and his accomplices. See United States v Davis, supra, at page 414; United States v Snook, 12 USCMA 613, 619, 31 CMR 199.

Nothing in defense counsel's chronology shows what steps were taken between July 7, the alleged date of completion of the police report, and the preparation of the sworn charges on July 17. Defense counsel argued at trial that "no reason [was] indicated for this delay." However, the stipulation of facts and the charge sheet, a copy of which was before the law officer, show proceedings were had in the case during this interval. The charge sheet was sworn to by the accused's Company Commander, Captain George Morgan. The stipulation of facts shows that Captain Morgan was not present at the accused's apprehension. Necessarily, he had to be informed of the incident by the police, and had to examine the available evidence to determine what disposition to make of the charges. If he decided in favor of a court-martial, he had to obtain advice on, or acquaint himself with, the proper form for the several charges. See Manual for Courts-Martial, supra, paragraph 32. Since the proceedings occurred within the confines of Fort Carson, the ten-day period it took Captain Morgan to discharge these responsibilities is somewhat long; but considering the seriousness of the charges, the period is not inordinately long. It cannot be regarded as unreasonable or vexatious as a matter of law. United States v Brown, supra, 13 USCMA 11, at page 14.

So far as the period between July 17 and August 4 is concerned, the evidence before the law officer shows regular and expeditious proceedings. The charge sheet was forwarded by Captain Morgan to battalion headquarters, and was received by it on July 22. Two days later, the accused was advised of the formal charges, pursuant to paragraph 32f of the Manual for Courts-Martial, supra. About the same time, the charges were referred for investigation under the provisions of Article

---

[1] We accept the five-day period because it was part of the record before the law officer. Actually, the allied papers show the Military Police report of July 7 was merely a "1st Progress Report"; it specifically states that the "Investigation continues."

32 of the Uniform Code, supra. According to defense counsel's chronology, the Article 32 hearing was held on July 30. To take eight days to prepare for, and hold, a pretrial investigation, as required by the Uniform Code, on charges which can subject the accused to a dishonorable discharge and confinement at hard labor for fifteen years, is not unreasonable. In fact, even where the evidence of guilt is compelling, it may be of distinct advantage to the accused to have a few extra days to explore the feasibility of retaining particular counsel, or the advisability of requesting witnesses for the Article 32 hearing. To prepare the investigating officer's report; to submit it to the officer who requested the Article 32 investigation; to have that officer review the report, and forward it to the general court-martial authority within a period of four days reflects action, not delay. Similarly, action, not willful indifference to, or neglect of, the accused's right to speedy disposition of charges is apparent in the four days it took for the staff judge advocate to prepare and submit the pretrial advice as required by Article 34 of the Uniform Code, supra, 10 USC § 834, and for the convening authority to consider the evidence and decide to refer the charges to trial.

What remains is the interval between August 8, the date the charges were referred to trial by the general court-martial authority, and August 26, the date the case came on for hearing. Under Article 35 of the Uniform Code, supra, 10 USC § 835, the accused could not be tried over his objection "within a period of five days after the service of the charges upon him." Consequently, the earliest, regular date of trial was August 13. The record of trial shows that the first law officer of the court-martial to which the charges were referred was a member of the Army Trial Judiciary, with the principal station of his circuit at Fort Bliss, Texas. Since the law officer was on "circuit," a modest accommodation of the trial date to his docket was to be expected. Also, a change in the court membership, or a substitution of counsel or law officer, could affect the trial date. To

meet the special needs of the military services, such changes of personnel may be effected before arraignment "within the discretion of the convening authority." Manual for Courts-Martial, supra, paragraph 37a; cf. Article 29, of the Uniform Code, supra, 10 USC § 829; United States v Whitley, 5 USCMA 786, 789, 19 CMR 82. The convening authority's discretion may not be unlimited, but a legitimate change is a circumstance to be considered in determining the reasonableness of the time within which the accused was brought to trial. The court-martial appointing orders in the record of trial show a new law officer was assigned on August 21. The home station of his circuit was Fort Sill, Oklahoma. Again, a reasonable accommodation of the trial date to his docket was to be expected. Summarizing the evidence, no interval of time between the separate steps in the prosecution was unduly or uncommonly long, unreasonable, or oppressive. Nor was the aggregate period for all the steps preliminary to trial a violation of Article 10 of the Uniform Code, supra.

Turning to the accused's attack on the proceedings as a violation of Article 33 of the Uniform Code, supra, the Article provides as follows:

"When a person is held for trial by general court-martial the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the investigation and allied papers, to the officer exercising general court-martial jurisdiction. If that is not practicable, he shall report in writing to that officer the reasons for delay."

The problem presented by the Article is determination of the time the accused is "held for trial by general court-martial." Is this the moment of confinement? Is it the moment the officer exercising Article 15 jurisdiction over the accused recommends the accused be held for trial by general court-martial? See Manual for Courts-Martial, supra, paragraph 32. As this case shows, these times may be materially different; and the latter may occur more than eight days after the accused is ordered

into confinement. Assuming for the purpose of this appeal that ▮▮▮▮ the eight-day period starts to run from the moment of confinement, the failure to report to the general court-martial authority on the impracticality of forwarding the charges is not ground for reversing an otherwise valid conviction, if satisfactory reasons actually appear in the record of trial. In that situation, the record itself demonstrates that "neither a denial of due process nor prejudice to the substantial rights of the accused" is present. United States v McKenzie, supra, at page 364.

As we indicated earlier, the accused was confined on July 2; the file on the case was received by the general court-martial authority on August 4. The steps taken in the intervening period show clearly the impracticability of forwarding the charges and allied papers to the general court-martial authority within eight days of the accused's confinement. There is, therefore, no indication of a violation of the requirements of Article 33 of the Uniform Code, supra.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

The place for the resolution of the unexplained delay in preference and disposition of the charges against the accused is "at a level where testimony can be taken, witnesses examined, and testimony offered in rebuttal. In this manner the rights and interests of the accused and the Government will be preserved." United States v Schalck, 14 USCMA 371, 374, 34 CMR 151, 154. At least, we unanimously so declared sixteen months ago when allegations similar to those now before us were first presented on appeal. I adhere to that view, and am unwilling to substitute the purest speculation for a reasoned inquiry into why accused's trial was delayed for fifty-five days, when defense counsel forcefully brought the matter to the law officer's attention, the trial

counsel alleged the evidence was available, and the law officer arbitrarily disposed of the issue by refusing to make any inquiry "unless the defense can show that the failure to comply with Article 33 is prejudicing him in some way."

The real problem confronting the Court in this case is, as phrased in the granted assignment of error, whether the law officer properly denied the motion to dismiss "because the defense showed no evidence of prejudice," and not whether we believe there were reasons for the delay which could have been, but unfortunately were not, shown in the record. The speculative approach of the principal opinion avoids coming to grips with the central issue, i. e., who possesses the burden of explanation once a violation of Code, supra, Articles 10 and 33, 10 USC §§ 810, 833, is shown. Its rationale betrays an impatience with the commands laid down therein by Congress and implicitly suggests no remedy was intended for their enforcement, particularly where the accused, as here, makes the best of a bad situation, and not unsurprisingly argues to the court in mitigation and extenuation that it ought to consider his pretrial confinement in adjudging an appropriate sentence. I am in agreement with none of these propositions and, believing as I do, that the law officer improperly required the defendant to show he was prejudiced by the Government's sluggishness, I would reverse and remand the case for a further inquiry into the causes for the violations of the Code shown *prima facie* on this record. United States v Schalck, supra. Hereafter follows the reasoning which leads me to this conclusion.

Following his arraignment, the accused entered a plea of guilty to charges of housebreaking, in violation of Uniform Code of Military Justice, Article 130, 10 USC § 930, and larceny, in violation of Code, supra, Article 121, 10 USC § 921. After inquiry into the plea and receipt of a stipulation of fact, to which further reference will be made, defense formally entered a motion to dismiss the charges on the basis that there had been a violation of due

**357**

process as to the accused in the form of the delay in prosecuting him. The record establishes that he had earlier, and on an informal basis, advised the law officer of his intention so to move. Despite the receipt of the plea, the law officer noted, in light of that circumstance, he would consider the matter. In support of his motion, defense pointed out the accused had been placed in pretrial confinement on July 2; sworn charges were not preferred until July 17; these were not brought to the accused's attention until July 25; and they were investigated on July 30, received by the staff judge advocate on August 4; referred for trial on August 8; and the court-martial convened on August 26. Thus, a total of fifty-five days' delay was established. In further explanation, it was pointed out that "no excuse for this delay" had been shown. Defense counsel declared:

". . . The record indicates there was no problem in obtaining any records of the accused, or evidence; the Military Police report on the incident was completed the 7th of July; the accused made a statement on the 6th of July, and from the 6th of July it was not until the 17th of July before the charges were sworn. . . ."

The trial counsel conceded "the data the defense has brought forth appears to be correct," but, not anticipating the motion, stated, "I would have to check into any reason why there was all this delay." Regardless of the circumstances, however, he felt that "it . . . [was] not prejudicial to the accused."

The law officer referred to the stipulation of fact into which accused and his counsel had entered, found that it established accused had been apprehended inside the building into which it was alleged that he had broken, and ruled "there shouldn't be any question in his mind as to the reason for which he is being held." He concluded, therefore, there was no violation of Code, supra, Article 10. As to Code, supra, Article 33, he stated he would deny the motion "unless the defense can show that the failure to comply with Article 33 is prejudicing him in some way." He further noted a violation of the mentioned

Code section "may give rise to disciplinary action against the people who failed to comply with the statute," but did not warrant dismissal of the charges. The defense having nothing further to present, the motion was thereafter formally overruled.

Code, supra, Article 10, provides:

"Any person subject to this chapter charged with an offense under this chapter shall be ordered into arrest or confinement, as circumstances may require; but when charged only with an offense normally tried by a summary court-martial, he shall not ordinarily be placed in confinement. When any person subject to this chapter is placed in arrest or confinement prior to trial, *immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him.*" [Emphasis supplied.]

Code, supra, Article 33, with equal clarity, commands:

"When a person is held for trial by general court-martial the commanding officer shall, *within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the investigation and allied papers, to the officer exercising general court-martial jurisdiction.* If that is not practicable, he shall report in writing to that officer the reasons for the delay." [Emphasis supplied.]

It is also worthy of note, in connection with this problem, that Code, supra, Article 30, 10 USC § 830, pertinently declares:

"(b) Upon the preferring of charges, *the proper authority shall take immediate steps to determine what disposition should be made thereof in the interest of justice and discipline, and the person accused shall be informed of the charges against him as soon as practicable.*" [Emphasis supplied.]

When Congress was considering the passage of the Uniform Code, considerable attention was devoted to the provisions of these three Articles. Hearings before House Armed Services

Committee on HR 2498, 81st Congress, 1st Session, pages 905–912, 980–983, 1005. The purpose of their enactment was said to be in order to guarantee the speediest trial possible of confined personnel, consistent with protection of their own rights, in answer to frequent complaints that disposition of charges under the Articles of War and the Articles for the Government of the Navy had often been delayed extensively, with the accused—not entitled to bail—left languishing in confinement. Disposition "of the charges as soon as possible and . . . the notification of the accused" were both specifically demanded. House Report No. 491, 81st Congress, 1st Session, page 19. And Code, supra, Article 33, was said to be "intended to insure an expeditious processing of charges and specifications in general court-martial trials. The requirement that the report be made in writing will help insure compliance with this article." Senate Report No. 486, 81st Congress, 1st Session, page 17.

Our own cases have established the same construction of the Articles. Thus, in United States v Hounshell, 7 USCMA 3, 21 CMR 129, the Chief Judge early declared for a unanimous Court, at page 6:

". . . To give emphasis to the importance of the right [to a speedy trial], Congress provided that when a person is held for trial by general court-martial 'the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the investigation and allied papers, to the officer exercising general court-martial jurisdiction. If the same is not practicable, he shall report in writing to such officer the reasons for delay.' Article 33, Uniform Code of Military Justice, 50 USC § 604. It further provided that any person responsible for an unnecessary delay in the disposition of a case violates the Uniform Code. . . . Unquestionably therefore the right to a speedy trial is a substantial right. And, if it is denied to the accused, the trial judge can redress the wrong by dismissing the charges. Petition of Provoo, 17 FRD 183, affirmed 350 US 857, 100 L ed (Adv 68), 76 S Ct 101. Cf. United States v Parker, 6 USCMA 75, 85, 19 CMR 201."

And, in United States v Brown, 10 USCMA 498, 28 CMR 64, when it appeared that the accused was confined in April and not brought to trial until the end of July, and the law officer ruling adversely to the accused on a motion to dismiss for lack of a speedy trial on the basis that defense counsel had not shown material prejudice to Brown's substantial rights, we reversed, declaring, at page 503:

"From these provisions [Articles 10 and 33], read in the light of the intent of Congress as ascertained from the views of the framers of the Code, set out in our opinion in United States v Hounshell, supra, it is clear that whenever it affirmatively appears that officials of the military services have not complied with the requirements of Articles 10 and 33, supra, and the accused challenges this delict by appropriate motion, *then, the prosecution is required to show the full circumstances of the delay.* Of course, an accused is not automatically entitled to a dismissal of all charges against him. Rather, the law officer must decide, from all the circumstances, whether the prosecution has proceeded with 'reasonable dispatch.' United States v Callahan, 10 USCMA 156, 27 CMR 230.

"In the instant case, the law officer was aware of the date the accused was originally confined, when charges were preferred, referred for trial and served upon the accused. One hundred and eight days had elapsed before the accused was produced before a court-martial for arraignment. Obviously, each successive step was taken only after substantial delay. But, rather than explain these deficiencies, trial counsel, after conceding that the required pretrial steps had taken 'a little longer than is desirable,' lightly dismissed them with the assertion that he had no knowledge of the circumstances thereof. The law officer reflected a similar

approach to the problem for he immediately called upon the accused to establish specific prejudice. When no further evidence was advanced by the defense, he denied the motion before him. By these pronouncements he demonstrated his misconception of the effects of Articles 10 and 33. Rather than require the prosecution affirmatively to justify the delays, he called upon the accused to establish specific prejudice. This shifting of the burden of proof, or explanation, prevented the establishment of the circumstances of the delays at the trial level—the only satisfactory forum for conducting truly adversary proceedings, and for testing the validity of evidence in the time-honored process of cross-examination. By this action the law officer curtailed the development of all the circumstances essential to a proper determination of whether or not the lapse of time was due to purposeful or oppressive design on the part of the prosecution or to a lack of reasonable diligence. United States v Callahan, supra; Shepherd v United States, 163 F2d 974 (CA 8th Cir) (1947). Prejudice to the substantial rights of the accused is manifest. United States v Berry, supra." [Emphasis supplied.]

Finally, in United States v Schalck, supra, wherein accused raised for the first time before the board of review the fact that he had been confined for ninety-six days pending his trial, without charges having been preferred against him, a unanimous Court once more stated, at page 374:

". . . Article 10 guarantees to an accused his constitutional right to a 'speedy trial,' while Article 33 establishes that charges are to be forwarded within eight days after arrest or confinement, or a written explanation given for failure to do so, if not practicable. These provisions are further strengthened by Article 98 of the Uniform Code, 10 USC § 898, which provides punishment for anyone responsible for an unnecessary delay. . . ."

Turning to the evidence presented in

this case, and applying the foregoing holdings to the situation reflected by this record, it is obvious that our reversal is compelled. First, the defense counsel made plain on the record an unexplained delay of fifty-five days in the bringing of the prosecution to its final fruition. He clearly showed on the record a delay of fifteen days in the preference of charges, following accused's confinement on July 2. And nowhere in the record is there any "report in writing . . . [of] the reasons for delay." Code, supra, Article 33; United States v McKenzie, 14 USCMA 361, 34 CMR 141. Hence, just as in Brown, supra, violations of Code, supra, Articles 10 and 33, are shown, and just as we specifically held in that case, here also, "the prosecution is required to show the full circumstances of the delay." United States v Brown, supra, at page 503. Again, just as in that case, there was no attempt to make an explanation at all and, in lieu thereof, the law officer expressly ruled that the burden was on the defendant to demonstrate his rights had been materially prejudiced. In the absence of such a showing, as in Brown, supra, he failed to require the necessary explanation by the Government and denied the motion to dismiss the charges. In short, this case is four-square with what we have previously held to be the law and, no matter what the volume of others' protestations might be, I am firmly convinced that the contrary result which my brothers reach here has the ad hoc effect of wiping that decision from the books.

True it is that the delay here involved totals fifty-five days, while that in Brown amounted to 108 days; that in Schalck, supra, ninety-six days; and that in Hounshell, supra, 284 days, but the question is not how badly the services have broken the law in a particular case but whether they have violated the positive command of Congress at all. Of course, I do not advocate the automatic dismissal of charges in face of any violation of the mentioned Articles, and I so stated on behalf of the Court in United States v Brown, supra. What I do demand is compliance by the armed forces with the law as Congress

passed it and a proper inquiry by law officers into the facts when a violation of the Code is demonstrated on the record. That was not done here anymore than it was done in *Brown* or *Schalck*, both supra, and I would reverse here just as in those cases. If we do not insist upon a consistent approach to this recurring problem of unexplained delay, then the Articles will become a dead letter and accused persons—denied the opportunity for bail—will continue to go without relief until such time as their commanders find it convenient to try them. I submit that Congress intended no such situation to exist under the Code, and I cannot be a party to allowing it once more to rear its medusan head.

Turning to the rationale of the principal opinion, I reiterate that it depends chiefly upon appellate speculation as to the reason for the delay in this case. True it is that the law officer referred to the stipulation of fact regarding the accused's apprehension in the building into which he had broken, but, at most, such was utilized only to determine that he was aware of the reason for his forced incarceration. I, however, am not satisfied such is sufficient to serve as compliance with the express command of the statute that *"immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him."* (Emphasis supplied.) Code, supra, Article 10.

A similar argument was presented in United States v Schalck, supra, with the Government relying on a form which would indicate accused had been questioned, after proper warning, about his offense. While we did not formally pass on the matter, we pointed out the Government's "position hardly seems tenable in view of the specific language of Articles 10 and 33." United States v Schalck, supra, at page 374. Moreover, to say an accused must have known the nature of his offense because he committed it ignores the presumption of innocence, attributes to him the expertise of an attorney, and once more places on him the burden of personally finding out the reason for his incarceration as opposed to the duty of Government to inform him thereof. Cf. Code, supra, Articles 10, 33; United States v Brown, supra.

As to the explanation made by the principal opinion of the balance of the delay, I again point out that such is no more than a guessing game at this level as to matters which should have been settled below. Such delays can be found to be "neither unreasonable nor oppressive," only if such speculation is accepted, and I am unwilling to substitute it, as a basis for reasoned judgment, for a real development of what occurred, particularly when an appropriate motion was made at the trial and an opportunity existed for presentation of any explanatory matter. United States v Brown, supra. Unlike United States v McKenzie, supra, the record here does not show the basis for lack of prosecution, and I suggest it is not our duty to make up the deficiency on the basis of what may have happened. If this is the standard by which appeals are to be measured, then it would be as reasonable for me to conclude each period of delay was deliberately designed to oppress the accused into pleading guilty by keeping him in ignorance of the charges against him and delaying their disposition as long as possible. I do not so find, of course, for such would be as much a guess as the opposite course of my brothers. My point is simply that we must have a record on which to act, and where it is lacking, as here, it is our responsibility to send the case back to the "level where testimony can be taken, witnesses examined, and testimony offered in rebuttal." United States v Schalck, supra, at page 374. I would so order.

In sum, then, I believe this case is directly governed by our decisions in United States v Brown, supra, and United States v Schalck, supra. In affirming the decision of the board of review, we set aside those cases, even if only on an *ad hoc* basis. In thus failing to enforce the Congressional mandate contained in Code, supra, Articles 10 and 33, we leave the gate open to lengthier trial delays in the armed

services and a return to the problems which have existed in the past. I would require the Government to assume the burden of explaining the reasons for apparent violations of the mentioned Articles when they are shown on the record and, absent such, would set aside the findings of guilty and remand the case for that purpose. Believing this to be the proper approach in this case, I cannot join in the decision of my brothers.

I would reverse the decision of the board of review, and order the case reheard for the limited purpose of determining whether an appropriate explanation existed for the delays here shown and, in light of the matters disclosed, proper action on the motion by the defense counsel to dismiss the charges.