**630**

UNITED STATES

v.

Private (E–2) Norman B. SEWELL, 195–36–0186, US Army, Company B, US Army Personnel Control Facility, Fort George G. Meade, Maryland 20755.

CM 432204.

U. S. Army Court of Military Review.

9 Oct. 1975.

Appellate counsel for the Accused: CPT R. Stuart Broom, JAGC; CPT Theodore H. Watts, JAGC; MAJ Richard J. Goddard, JAGC; COL Alton H. Harvey, JAGC.

Appellate counsel for the United States: CPT Larry R. McDowell, JAGC; CPT Rich-

ard S. Kleager, JAGC; MAJ Steven M. Werner, JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

MOUNTS, Judge:

### CASE SUMMARY

Due to the accused's absence after arraignment a plea of not guilty was entered by the military judge for the accused. The accused was convicted of four specifications of absence without leave. Three of the absences occurred prior to the accused's pretrial confinement on 23 January 1969. The accused was released from pretrial confinement on 24 January 1969 and was placed in the custody of a county police detective on civilian charges of murder, robbery, burglary, larceny and conspiracy. The release to civil authorities was made pursuant to an agreement that the civil authorities would inform the military of the outcome of the trial or any other disposition of the charges and return the accused to the military, upon disposition of his case or when custody by civil authorities was no longer necessary (Def. Ex. J). On 31 January 1969 charges for the three absences were preferred. The accused remained under the control of civil authorities until 2 December 1971 without being tried for any of the alleged civil offenses. The accused's military charges for the three absences were again preferred on 21 December 1971 and referred to a special court-martial on 22 December 1971. The accused, however, again absented himself without authority prior to trial on 12 January 1972 and remained so absent until 8 October 1973. The accused was subsequently tried by a general court-martial beginning on 15 January 1974 for four periods of absence without leave.

### ISSUES

The defense has raised three assignments of error in this case. We find no merit to the alleged error concerning the defense counsel's argument as to an appropriate sentence. We will discuss the two remaining assigned errors:

1

Since three specifications of absence without leave were initially preferred against the accused on 31 January 1969, the Government's lack of diligence in bringing the appellant to trial amounted to an unreasonable delay, thereby denying him his right to a speedy determination of the three specifications of absence without leave.

II

The military judge erred to the substantial prejudice of the accused in denying trial defense counsel's challenge for cause of a court member. The facts concerning this denial of the challenge will be presented later in this opinion.

### DECISION

■ The key question presented by the first issue is whether the Government should be charged with the delay for the prosecution of the three absence without leave charges during the over two-year period when the accused was in the custody of civilian authorities.

The three absences occurred prior to the applicable date[1] of the *Burton*[2] rule and are not governed by the mandatory 90-day pretrial period test for delay. We shall therefore use the pre-*Burton* test and determine if the Government displayed an oppressive or purposeful design to delay appellant's trial.[3]

The convening authority released the accused to civilian authorities, before charges were preferred, based upon the exercise of his sound discretion under the authority of

1. *United States v. Rodgers*, 23 U.S.C.M.A. 389, 50 C.M.R. 271, 1 M.J. 20 (1975).

2. *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

3. *United States v. Tibbs*, 15 U.S.C.M.A. 350, 35 C.M.R. 322 (1965).

applicable regulations.[4] The U. S. Army Court of Military Review has held that the use of this discretion to release an accused to civilian authorities causes the Government to be accountable for the time the offender is under the control of civilian authorities.[5] The United States Air Force Court of Military Review has reached an opposite result. In the case of *United States v. Steverson*,[6] the Air Force Court of Military Review ruled that the Government was not accountable for the delay during the period of state confinement. In the *Steverson* case the accused airman was apprehended on military charges by civil authorities and returned to military control. He was subsequently released to state officials for prosecution of state charges and the military charges were held in abeyance. The military offenses, although known to the Government at the time of release, were not preferred until the accused was again returned to military control. The preferral of the charges after return to military control is a distinguishing factor from the case, *sub judice*, however, this Court does not consider that this fact should make a difference in the ultimate resolution of the issue.

■ The appellate defense counsel places great stress upon *United States v. Keaton*,[7] and argues that its holding is dispositive of this issue. We do not agree. *Keaton* concerned an accused's apprehension by Government agents and his confinement by state officers on behalf of the Federal Government. In our case the state authorities requested and obtained custody of the accused for state charges on behalf of the state alone. At the time of delivery of the accused to the state authorities the Government ceased to have any control of the time and method of disposition of the accused's alleged state criminal offenses. The accused during his pretrial confinement for the state charges did request military counsel to aid him in defending the state charges and requested information as to his military status. The record is not completely clear concerning the responses the accused received to these requests for information. He was informed that the absence without leave charges were preferred, but even assuming a partial failure to keep the accused informed in a timely manner of administrative procedures, this fact is not sufficient to charge the Government with a purposeful design. In any event, the military was under no duty to furnish the accused a military counsel to aid him in defense of his state criminal charges. The accused was provided with a military counsel upon his return to military control.

■ This Court holds that neither the U. S. Army Court of Military Review nor the United States Air Force Court of Military Review are correct in their respective determinations of the law in this area. A holding that the delay must always be chargeable to the Government ignores the compelling consideration of aiding a state jurisdiction for a timely disposition of criminal offenses without prejudicing the need for maintenance of order in the military. Conversely, a holding that the delay will never be charged to the Government ignores the possibility that the accused's due process rights may be irreparably breached

4. AR 633–1, dated 13 September 1962, states in part:

. . . will deliver a member of the Armed Forces to such [civilian] authorities upon presentation of a proper request accompanied by reliable information showing that there is reasonable cause to believe that the person requested has committed a crime or offense made punishable by the laws of the jurisdiction making the request. A person will not be shielded from a just prosecution by the *civil* authorities because of his status as a member of the Armed Forces. In determining whether a member of the Armed Forces should be delivered to civilian authorities the commanding officer will exercise his sound discretion in the light of facts and circumstances of each particular case. (Para. 9b, AR 633–1, dated 13 September 1962).

5. *United States v. Swartz*, 44 C.M.R. 403 (ACMR 1971); *cert. denied* 21 U.S.C.M.A. 666 (1971), Pet. w/d 21 U.S.C.M.A. 653 (1971), 45 C.M.R. 930 (1972).

6. 45 C.M.R. 649 (AFCMR 1972), *pet. denied* 21 U.S.C.M.A. 629, 45 C.M.R. 929 (1972).

7. 18 U.S.C.M.A. 500, 40 C.M.R. 212 (1969).

due to the discretionary release of the accused by the convening authority to civilian authorities without first disposing of the accused's military offenses. This possibility of an irreparable breach appears to be most crucial when the accused has an affirmative defense which requires the testimony of defense witnesses. Under these circumstances the accused's transfer to civil authorities without trial of his military charges could result in his inability to later present an effective affirmative defense to the military charges. These considerations must be balanced, however, against the fact that the accused's alleged civil misconduct can not be used by the author as a shield to prevent proper disposition of military charges. If the Government were always chargeable with the delay, an accused pending trial for military offenses may effectively terminate the military proceedings by his voluntary misconduct of a particularly heinous nature in the civilian community. For example, if the military member pending military charges is alleged by probable cause warrant to have committed several acts of murder and the accused's presence is immediately necessary to facilitate state processing of the murder charges, no convening authority would fail to use his discretion in favor of immediately releasing the accused to civil custody. Must this wholly reasonable act result in prejudice to the Government as to the pending military charges? When considering that the accused himself is one of the prime movers in creating this due process dilemma, the initial question may be resolved by stating that the answer is no. But, not an unqualified no, because despite the accused's alleged misconduct, the charges are allegations preliminary to trial and must be balanced against the fundamental presumption of innocence and the absolute requirements of a fair pretrial procedure. This Court, therefore, determines as a guide to future cases under the *Burton* doctrine, that the Government will not be responsible for the delay if after balancing certain relevant factors and providing certain procedures which will be subsequently explained, it is

determined that the expeditious release of the accused to civil authorities will serve a compelling social interest in the civilian community when balanced against the rights of the accused and the needs of the service. Of particular importance is the Government's ability to establish prior to the release that the military aided the accused in attempting to avoid any possible prejudice in the future prosecution of the military offenses. The relevant factors and procedures are as follows:

1. The appointment of military counsel for the accused for the alleged military offenses only, prior to release of the accused to civil authorities. The counsel may present relevant facts or law on the accused's behalf to the convening authority. This will avoid an ex parte determination of the issue and provide the accused an effective forum prior to the convening authority's decision.

2. The validity of the need for immediate release to civil authorities when balanced against the expeditious trial of the accused by the military and subsequent release to civil authorities. When making this determination, consideration must be given to the possibility of irreparable prejudice to the accused's military case despite appointment of military counsel for the accused.

3. The gravamen of the military offenses in contrast to the alleged civil offenses.

4. The Government must insure that timely and continued requests are made to the civilian jurisdiction to determine the status of the accused's case and to facilitate the most expeditious return possible to the military.

5. Consideration of any other unique circumstances and all other factors set out as guidelines in applicable regulations [8] for delivery of military members to civil authorities in the United States.

▆ It is emphasized that the above guidelines should be followed when the ac-

8. *See* Para. 6, AR 600-40, dated 4 November 1971.

cused is released to civil control with military charges held in abeyance. When release is made to civil authorities without holding military charges in abeyance, existing regulatory procedures provide sufficient procedural due process.

In advancing these guidelines the Court is cognizant that the accused in this case was not afforded several of their benefits nor in particular was he provided military counsel prior to his release to civil authorities. Since no military counsel was required at that time to be appointed at that stage of the proceedings, we will not apply the guidelines retroactively in this case. The record does not reveal any specific prejudice that the accused may have suffered in attempting to marshall evidence or witnesses to refute the absence without leave charges. We therefore hold that although the Government could have done more to aid the accused, the Government did not display an oppressive or purposeful design to delay the accused's trial in this case and the delay will, therefore, not be accountable to the Government.

If the guidelines announced by the Court today are followed in the future, this Court anticipates that the Government could meet the more stringent requirements of *Burton* by showing that "really extraordinary circumstances" caused the delay but despite these circumstances the Government showed diligence in protecting the accused's due process rights. Although the military cannot interfere with the process of civil cases by civilian authorities once an accused is released to them, the appointment of military counsel prior to release will provide the service member with a knowledgeable point of contact as a continuing aid in the defense of the pending military charges. Adherence to the proposed guidelines should insure a meaningful balancing of concerns prior to release and result in a more expeditious return to the military community upon release of the member from civilian jurisdiction.

This Court has solely considered the release of service members to jurisdictions within the United States. Consideration of the release of service members to foreign jurisdictions while holding military charges in abeyance requires other considerations.

The second issue concerns the voir dire of a court member who was challenged for cause and subsequently peremptorily challenged by the defense. The pertinent part of the voir dire proceeded as follows:

[DC:] Gentlemen, if you find that there is a finding of guilty in this case, I only have this opportunity to question you, not conceding the point that there would or there wouldn't be, but if there is you will be charged with the duty of adjudging an appropriate sentence. The trial counsel asked you if any of you would have a preconceived notion based on those charges. Would any of you lean toward a particular sentence at this time for the offenses of AWOL, assuming simply for the sake of this question, a finding of guilty is adjudged? Lieutenant Colonel Nee?

PRES: No, not at this time.

DC: Lieutenant Colonel Nee, do you feel like there is a particular type of punishment appropriate for the offense of absence without leave?

PRES: I guess it depends, of course, upon the circumstances.

DC: Have you ever followed any particular rule in dealing with absence without leave offenses?

PRES: Yes, I have.

DC: And what is that rule?

PRES: Well if I had an NCO for example, who went AWOL, he doesn't deserve to have any stripes in my opinion.

DC: Have you followed the policy of giving the maximum punishment for the offense?

PRES: Yes, I have.

DC: And I believe once before you made the statement that you didn't feel like there was any excuse for the offense of absence without leave, is that correct?

PRES: Correct.

DC: Sir, would it be fair to say at this time that you believe that you have a certain opinion as to an appropriate pun-

ishment to the offenses before the court, if he were found guilty?

PRES: If he were found guilty, yes, but that doesn't mean I would give him the necessary—give him necessarily the maximum. As I say, I have done this in the past.

DC: And would you look to my client to explain why he shouldn't be given the maximum punishment?

PRES: Well since your client is not here, I can't very well do that.

DC: Where does that leave you sir?

PRES: It depends upon what comes up in the court.

■ Appellant relies on *United States v. Karnes* [9] in asserting that Lieutenant Colonel Nee's challenge for cause should have been sustained by the military judge. In the *Karnes* case the Court of Military Appeals stated that a challenge for cause should be sustained when the response of the member clearly reflects an inelastic attitude toward the imposition of a punitive discharge which was based solely on the nature of the crime. The member in this case stated in conclusion that he would base his decision on the sentence, "upon what comes up in the court." Taken as a whole the responses of the member do not reflect an inelastic attitude. He did express a concern as to the gravamen of an absence without leave offense, but balanced this concern with a desire to properly consider all the circumstances surrounding these particular offenses. The challenge for cause was properly denied by the military judge.

The findings of guilty and the sentence are affirmed.

Senior Judge CARNE and Judge MITCHELL concur.

UNITED STATES

---

9. (No. 30,329) 23 U.S.C.M.A. 537, 50 C.M.R. 708, 1 M.J. 92 (1975).