# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant BRIAN W. SCHWISOW**
**United States Army, Appellant**

ARMY MISC 20150720

Headquarters, I Corps and Joint Base Lewis-McChord
Jeffery D. Lippert, Military Judge
Colonel Randall J. Bagwell, Staff Judge Advocate

For Appellant:  Colonel Mark H. Sydenham, JA; Captain Jihan Walker, JA; Captain Carling M. Dunham, JA (on brief).

For Appellee:  Lieutenant Colonel Jonathan F. Potter, JA; Major Andres Vazquez, Jr., JA; Captain Matthew L. Jalandoni, JA (on brief).


18 February 2016

---------------------------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON APPEAL
BY THE UNITED STATES FILED PURSUANT TO
ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE
---------------------------------------------------------------------------

CAMPANELLA, Judge:

Appellee was charged with one specification of desertion, four specifications of failure to repair, one specification of assaulting a superior officer, one specification of willfully disobeying a noncommissioned officer, one specification of violating a lawful general order, one specification of distribution of a controlled substance, two specifications of possession with intent to distribute a controlled substance, one specification of possession of a controlled substance, and two[1] specifications of use of a controlled substance in violation of Articles 85, 86, 90, 91, and 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 885, 886, 890, 891, 912a (2012).

---

[1] The military judge dismissed one specification of use of a controlled substance, Specification 5 of Charge VI.

On 6 October 2015, a military judge dismissed all charges and specifications, with prejudice, based on violations of Rule of Courts-Martial 707 [hereinafter R.C.M.], and Article 10, UCMJ.

This case is before this court pursuant to a government appeal of the military judge's ruling in accordance with Article 62, UCMJ, and R.C.M. 908(a). The government asserts that the military judge erred in dismissing the charges against appellee with prejudice by erroneously attributing defense delay to the government, erroneously balancing the R.C.M. 707 factors for determining whether to dismiss with prejudice, and erroneously evaluating whether the government proceeded with reasonable diligence. We agree and reverse the military judge's ruling to dismiss all charges and specifications with prejudice.

## BACKGROUND

*Case Processing*

The following summarizes the key dates and events pertinent to appellee's motion to dismiss:[2]

- 4 June 2014: Appellee was placed into pretrial confinement.

- 11 June 2014: Charges were preferred.

- 18 June 2014: Defense Counsel requested a R.C.M. 706 board after appellee displays "paranoid" behavior.

- 27 June 2014: Special Court-Martial Convening Authority (SCMCA) orders a R.C.M. 706 board.

- 28 July - 8 August 2014: R.C.M. 706 board conducted. The board was unable to complete the examination of appellee given his state of mind at the time of the examination. The board diagnosed appellee with "[u]nspecified schizophrenic spectrum and other psychotic disorder" and an unspecified "substance related disorder," and concluded he was not competent to stand trial. Due to this diagnosis, the board was unable to make a determination as to whether appellee had a severe mental disease or defect at the time of the alleged criminal misconduct.

---

[2] The parties stipulated at trial to most of these dates.

2

- 17 August 2014 – General Court-Martial Convening Authority (GCMCA) orders appellee to be placed into custody of the Attorney General at Butner Federal Medical Center (FMC).[3]

- 10 September 2014 – Butner FMC receives appellee for mental health treatment.

- 9 January 2015 – Appellee is released back to Army custody by Butner FMC.

- 14 January 2015 – The Article 32 officer sets 21 January 2015 as a preliminary hearing date. Defense requests a delay until 4 February 2015.

- 22 January 2015 – Defense requests an additional delay until 10 February 2015.

- 9 February 2015 – In an email to trial counsel, defense requests a second R.C.M. 706 board, stating in the request "defense is requesting a delay until completion of a R.C.M. 706 board," and "delay would be attributable to the defense."

- 10 February 2015 – Trial counsel formally submits a request to the convening authority to conduct a second R.C.M. 706 board.

- 12 February 2015 – Convening authority approves the request for a R.C.M. 706 board with a forty-five-day deadline.

- 17 February 2015 – Trial counsel asks personnel at Madigan Army Medical Center (MAMC) to obtain appellee's medical records from Butner FMC.

- 18 February 2015 – Trial counsel contacts appellee's doctor at Butner FMC to facilitate obtaining appellee's medical records for the R.C.M. 706 board.

- 19 February 2015 – Butner FMC personnel request appellee to provide a Health Insurance Portability and Accountability Act (HIPPA) waiver to release his records to MAMC.

---

[3] The Butner FMC is a United States federal prison in North Carolina for male inmates of all security levels who have special health needs including behavioral health. It is part of the Butner Federal Correctional Complex and is operated by the Federal Bureau of Prisons, a division of the United States Department of Justice.

- 20 February 2015 – Trial counsel asks defense counsel to obtain a HIPPA waiver from appellee.

- 24 February 2015 – Trial counsel follows up on the status of the HIPPA waiver request with defense counsel

- 26 February 2015 – Defense counsel sends appellee's HIPPA waiver to Butner FMC.

- 4 March 2015 – Trial counsel contacts the R.C.M. 706 board for an update on the status of the board and offers his assistance.

- 30 March 2015 – Trial counsel asks MAMC personnel for an update on the progress of the R.C.M. 706 board.

- 15 April 2015 – R.C.M. 706 board receives appellee's medical records.

- 4 May 2015 – R.C.M. 706 board conducts its review.

- 13 May 2015 – R.C.M. 706 board completed its report, ninety-one days after the convening authority's order. The board finds appellee did not suffer from a severe mental disease or defect at the time of the alleged misconduct. The board changes its psychiatric diagnosis to "amphetamine-induced psychotic disorder, in remission" and "amphetamine-related use disorder, in a controlled environment."

- 20 May 2015 – Trial counsel emails defense counsel asking him if appellee is going to waive his Article 32 hearing.

- 27 May 2015 – Trial Counsel emails a stipulation of fact to defense counsel based on pretrial negotiations.

- 31 May 2015 – Trial counsel asks defense counsel when he would be able to meet with appellee to review the stipulation of fact.

- 3 June 2015 – Trial counsel coordinates with the unit to arrange a meeting between appellee and his defense counsel.

- 5 June 2015 – Defense counsel reviews the stipulation of fact with appellee.

- 8 June 2015 – Trial counsel asks defense counsel whether appellee is going to enter into a pretrial agreement to determine if the Article

32 should be scheduled.  Defense counsel responds that there is an issue with the stipulation of fact but they are "close."

- 26 June 2015 – Government received an individual military counsel (IMC) request for appellee's prior defense counsel.  Government sends an e-mail to defense counsel stating they need to submit an offer to plead guilty within five days or the government would no longer be pursuing a pretrial agreement.

- 30 June 2015 – Government learns appellee is not going to offer to plead guilty.

- 1 July 2015 – A new Article 32 officer is appointed.  Government states they are ready to proceed on 2 July 2015.  Article 32 officer states it is unreasonable to proceed on 2 July 2015 because defense would have no time to request witnesses or evidence and sets the hearing for 7 July 2015.  The convening authority also grants appellee's IMC request.

- 7 July 2015 – Defense submits a request for delay.  The Article 32 officer grants the request.

- 15 July 2015 - Defense requests an additional week delay stating appellee intends to hire civilian counsel.

- 20 July 2015 - Civilian defense counsel sends an email releasing the IMC defense counsel.  Defense counsel stated sixty-one days of delay should be attributable to the defense because he needed time to prepare.

- 21 July 2015 – Convening authority attributes 7 July - 18 August 2015 delay to the defense.

- 18 August 2015 – The Article 32 is conducted.  Defense makes a demand for speedy trial.

- 27 August 2015 – Charges are referred.

- 8 September 2015 – The date the government requests arraignment on the electronic docket notification (EDN)

- 17 September 2015 - Appellee is arraigned.

- 22 September 2015 – Defense files its motion to dismiss

> 6 October 2015 – The military judge dismisses all charges and specifications with prejudice.

*Litigation of the Speedy Trial Motion*

At trial, the accused moved to dismiss all charges and specifications for lack of a speedy trial. The military judge granted the motion and found there were 242 days between the date of appellee's return from Butner FMC to the date the government requested for arraignment (9 January – 8 September 2015).[4] Instead of making specific findings on the entire time period, the military judge only stated the dates he deemed relevant for purposes of what days were attributable to the government.

The military judge stated 136 days were attributable to the government as follows:

- 9-21 January 2015 – appellee's return to custody through the date the Article 32 officer set for the preliminary hearing – thirteen days.

- 12 February - 13 May 2015 – the R.C.M. 706 board, excluding the forty-five days permitted by the convening authority – forty-six days.

- 13 May - 7 July 2015 – pretrial negotiations - fifty-six days.[5]

- 19-21 August 2015 – Article 32 officer's preparation of the report – three days.

- 22-27 August 2015 – Article 32 report completed to referral of charges – six days.

- 27 August – 8 September 2015 – referral of charges to arraignment – twelve days.

In the military judge's written findings of fact, the military judge stated the government did not receive notice from Butner FMC that appellee had been returned to a state of competency nor did they seek such confirmation, but instead began

---

[4] A new 120-day clock started on 9 January 2015 when appellee was released back to the military from Butner FMC.

[5] The military judge previously counted 13 May 2015 so pretrial negotiations actually constituted fifty-five days.

negotiating with defense for a pretrial agreement immediately after his release from Butner FMC.  The military judge concluded that when the defense suggested/requested a second R.C.M. 706 inquiry as part of the pretrial negotiations, "the government acquiesced to the defense suggestion/request."  "However, it was the government which actually requested the SPCMCA [to] order a second R.C.M. 706 inquiry on 12 February 2015."

The military judge went to extreme length both on the record during the motions hearing and in his written findings to state that he believed the second R.C.M. 706 board was unnecessary.  He stated appellee was competent to stand trial based on his release from Butner FMC.

The convening authority ordered the R.C.M. 706 board to be completed within forty-five days.  It took ninety-one days to complete the second R.C.M. 706 board.  The military judge noted that the government did not ask for an extension past the forty-five days allotted by the SPCMCA.  The military judge concluded that the government provided "no sufficient explanation for why the second R.C.M. 706 Inquiry took 91 days."  Thus, he attributed the additional forty-six days to the government.

During the pendency of the case, two urinalysis samples, the basis for the two specifications of wrongful use of a controlled substance, in violation of Article 112a, UCMJ were destroyed.  Pursuant to the operations policy of the United States Army Drug Laboratory at Tripler Medical Center, these samples were destroyed a year after they were tested because neither the government nor the defense took measures to preserve them.  The military judge denied defense's motion to abate the proceedings based on the destruction of these samples.

## LAW AND DISCUSSION

R.C.M. 707 provides that the "accused shall be brought to trial within 120 days after the earlier of: (1) preferral of charges; (2) the imposition of restraint under R.C.M. 304(a)(2)-(4); or (3) entry on active duty under R.C.M. 204."  R.C.M. 707(a)(1)-(3).

The rule allows authorized personnel to approve delays, and therefore "exclude" time from the R.C.M. 707 120-day clock.  R.C.M. 707(c).  Prior to referral, any request for pretrial delay must be submitted to either the convening authority, the Article 32 officer (if the convening authority has properly delegated delay authority), or "if authorized under regulations prescribed by the Secretary concerned, to a military judge for resolution."  R.C.M. 707(c)(1); *United States v. Lazauskas*, 62 M.J. 39, 41-42 (C.A.A.F. 2005); R.C.M. 707(c)(1) discussion.  After referral, only a military judge can approve any pretrial delay.  R.C.M. 707(c)(1).

The decision to approve or disapprove a delay is reviewed for an abuse of discretion. *See Lazauskas*, 62 M.J. at 41 (citing R.C.M. 707(c)); *See also United States v. Arab*, 55 M.J. 508, 512 (Army Ct. Crim. App. 2001). There must be "good cause" for the delay and the length of time requested must be "reasonable" based on the facts and circumstances of each case. *United States v. Thompson*, 46 M.J. 472, 475 (C.A.A.F. 1997); *see also* R.C.M. 707(c)(1) discussion; R.C.M. 707(c) analysis at A21-42.

If there is a violation of R.C.M. 707, the next step is to determine if there is an Article 10, UCMJ speedy trial issue. Whether an accused has received a speedy trial is a question of law that is reviewed de novo. *United States v. Doty*, 51 M.J. 464, 465 (C.A.A.F. 1999). "The military judge's findings of fact are given 'substantial deference and will be reversed only for clear error.'" *Id.* at 465 (quoting *United States v. Taylor*, 487 U.S. 326, 337 (1988)).

Article 10, UCMJ, does not require "constant motion, but reasonable diligence in bringing the charges to trial." *United States v. Wilson*, 72 M.J. 347, 351 (C.A.A.F. 2013) (quoting *United States v. Mizgala*, 61 M.J. 122, 127). "Brief periods of inactivity in an otherwise active prosecution are not unreasonable or oppressive." *United States v. Kossman,* 38 M.J. 258, 262 (C.M.A. 1993) (quoting *United States v. Tibbs*, 15 U.S.C.M.A. 350, 35 C.M.R. 322, 325 (1965).

Although Article 10 imposes a more stringent speedy trial standard than the Sixth Amendment, the factors from *Barker v. Wingo*, 407 U.S. 514 (1972), structure the examination of "facts and circumstances surrounding an alleged Article 10 violation." *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007) (quoting *Mizgala*, 61 M.J. at 127); *United States v. Birge*, 52 M.J. 209, 212 (C.A.A.F. 1999). The *Barker* factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *Birge*, 52 M.J. at 212 (quoting *Barker*, 407 U.S. at 530). The Supreme Court explained that it regarded none of the four factors as either a necessary or a sufficient condition to the finding of a deprivation of the right of speedy trial. *Barker*, 407 U.S. at 533. The Supreme Court pointed out that the four factors are related and must be considered together with other relevant circumstances in the "difficult and sensitive balancing process." *Id*.

*R.C.M 707 Analysis*

In the present case, we find the military judge erred when he asserted that a second R.C.M. 706 inquiry was *not necessary*. Even if appellee had been competent to stand trial, the second question posed by the first R.C.M. 706 inquiry still remained unanswered – specifically, did appellant suffer from a severe mental disease or defect rendering him unable to appreciate the nature or quality of the wrongfulness of his actions at the time they occurred. The first R.C.M. 706 inquiry

was never completed because appellee was found incompetent to stand trial. Additionally, there was no evidence of a competency determination when he was released from Butner FMC. The military judge erred when he conflated concepts of "competency" and "mental responsibility."

Further, we find that the military judge erred when he asserted that the government, not the defense, requested the second R.C.M. 706 inquiry. The government merely administratively facilitated defense's request to the convening authority. The defense plainly asserted in *their request* that they would be responsible for the delay in conducting the second R.C.M. 706 inquiry. It would be a windfall to the defense to allow appellee to benefit from receiving that which they specifically requested while agreeing to the delay.

Under the circumstances, it would have been wholly inappropriate for the government to deny defense's request for a second R.C.M. 706 inquiry. The time it took to complete the second R.C.M. 706 board was also reasonable under the circumstances because there was difficulty in the board obtaining appellee's medical records from Butner FMC and it is clear from the record the government was actively assisting the board throughout the process. We also note during the ninety-one day period it took for completion of the second R.C.M. 706 board that appellee made no demand for speedy trial or voiced complaints about the delay. Thus, we find the military judge abused his discretion in failing to grant the delay and exclude the time to conduct the second R.C.M. 706 board from the R.C.M. 707 120-day clock.

After considering the military judge's errors, we find only eighty-nine days[6] should have been attributable to the government.[7]

*Article 10 Speedy Trial Analysis*

Assuming, arguendo, there was a violation of R.C.M. 707, we still find, after balancing the *Barker v. Wingo* factors, that appellee's Article 10 right to a speedy trial was not violated.

---

[6] The military judge also erred when he counted the day, 13 May 2015, twice when adding together the total days attributable to the government.

[7] Even if there was an R.C.M. 707 violation, dismissal with prejudice was not appropriate under the circumstances because appellee was charged with desertion, assaulting a superior commissioned officer, and possession and distribution of drugs, which are serious offenses; the defense contributed to the circumstances leading to the dismissal by requesting several delays; prosecution of appellee would not result in a "manifest injustice;" and the prejudice to appellee is minimal. *See* R.C.M. 707 (d)(1).

9

1) Length of delay.

During the period of 4 June 2014 to 17 September 2015, excluding the time appellee was at Butner FMC, appellee was in pretrial confinement for 349 days.

2) Reasons for delay

Throughout the process, the government has acted with reasonable diligence to bring appellee to trial. In fact, the actions outlined by the government, including lengthy e-mail exchanges, phone calls, coordination attempts, and requests for information to move the process forward, indicate a clear pattern of action on the part of the government. Moreover, the two R.C.M. 706 boards, appellee's commitment to Butner FMC, the IMC request, and several changes in counsel have complicated processing this case.[8] In fact, the government's coordination with Butner FMC to obtain appellee's records (fifty-seven days), which included trial counsel's coordination with defense counsel to obtain appellee's HIPPA waiver (six days), was something the government had little control over. The defense was also responsible for several periods of delay during this period.[9]

3) Whether appellee made a demand for a speedy trial

Appellee demanded a speedy trial on 18 August 2015, after requesting a second R.C.M 706 board and accepting the time it would take to complete it as *defense delay*, on top of numerous other defense requests for delay. Appellee demanded speedy trial extremely late in the pretrial process.

4) Prejudice to appellee

The Supreme Court has identified the following interests which must be considered when testing for prejudice in the speedy trial context: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of [appellee]; and (iii) to limit the possibility that the defense will be impaired. "Of these, the

---

[8] Appellee fired his detailed military defense counsel (Captain (CPT) P) soon after charges were preferred against him. Another military defense counsel (CPT K) was appointed shortly after that, and CPT G took over appellee's case when CPT K was released. A few weeks later, appellee made an IMC request for CPT K to resume representation. The government granted appellee's IMC request, but then appellee hired civilian counsel and CPT K was released a second time. Government counsel also changed throughout the duration of the processing of this case.

[9] Appellee requested five separate Article 32 delays, including a delay to hire civilian counsel, and delays for the R.C.M. 706 boards.

most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

With respect to prejudice from the conditions of his incarceration, we note that although the record attempts to establish the negative aspects of his confinement and the conditions therein, the balance weighs against concluding that the conditions were "oppressive" for purposes of prejudice under Article 10. *See Id*. Appellee did not raise any formal or informal complaint about his confinement conditions or otherwise request a change in conditions during the period at issue.

The pretrial delay did have an impact on the availability of potentially favorable defense evidence in this case – appellee's urine samples. Although the military judge ruled that this evidence was not essential to a fair trial, and both parties share some responsibility for the destruction of it, not having access to this evidence does prejudice appellee. However, after balancing the factors identified by the Supreme Court, we find that prejudice, if any, was minimal.[10]

Considering all the circumstances in the case, we find that appellee was not denied his Article 10 right to a speedy trial.

## CONCLUSION

Based upon our review of the record, the appeal of the United States is granted. The military judge's ruling to dismiss all charges and specifications is vacated and the record will be returned to the military judge for action not inconsistent with this opinion.

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[10] Additionally, it is important to note that this only affects one remaining charge and specification, Specification 6 of Charge VI. The military judge's dismissal of Specification 5 of Charge VI, is unaffected by our decision because it was for separate grounds and it occurred prior to the military judge's Article 10 ruling.